UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD WATTS, | |
|     Petitioner, | Civil Action No. 11-0912 (RBK) |
|     v. | **MEMORANDUM OPINION AND ORDER** |
| USA, | |
|     Respondent. | |

IT APPEARING THAT:

1. In March 2009, Petitioner, a federal inmate, initiated § 2255 proceedings with the United States District Court for the Northern District of New York ("NDNY"), i.e., the court that rendered Petitioner's federal conviction and sentence underlying Petitioner's present incarceration served at the F.C.I. Fort Dix, New Jersey. See Docket Entry No. 7, at 1.

2. In February 2011, the NDNY issued a decision addressing Petitioner's challenges raised in his § 2255 motion. See id. at 2; see also Docket Entry No. 6 (replicating NDNY determination). In its decision, the NDNY noted that Petitioner's challenges packaged in his § 2255 motion were of three types: (a) bona fide Section 2255 claims; (b) civil rights claims challenging alleged denial of medical care; and (c) those claims, which the NDNY construed as § 2241 challenges. See Docket Entry No. 6. Specifically, with regard to the latter type, the NDNY observed as follows:

> Petitioner asserts [three sub-groups of challenges, i.e., he maintains] that (1) he has not received credit for twenty-two months of state jail time he served after he received his federal sentence; (2) he has not received credit for 500 hours he spent in a drug program . . .; and (3) he has taken various vocational and rehabilitative classes while incarcerated, as well as being trusted to participate in various food service and work programs . . . . No matter how the Court construes these statements, they are clearly assertions that prison officials have improperly computed his sentence.

Id. at 10.

3. Therefore, the NDNY transferred the above-noted three sub-groups of Petitioner's challenged, which NDNY construed as § 2241 claims, to this District. See id. at 11-12; see also Docket Entry No. 7 (reflecting receipt of transfer order as to thee claims). The transfer order did not provide for severance of these sub-groups; rather, the entire § 2255 action was transferred to this District, including the resolved-by-NDNY-§-2255-claims, the dismissed-denial-of-medical-care claims and the claims construed as § 2241 challenges. See id. The so-transferred matter was assigned to the undersigned.

4. This Court agrees with NDNY determination that Petitioner's jail-time-credits challenges are best viewed as a § 2241 claim. Analogously, this Court agrees with NDNY determination that Petitioner's RDAP challenges are too best viewed as a § 2241 claim.

5. The Court, however, is unclear as to the basis of NDNY determination that Petitioner's challenges based on his vocational and rehabilitative classes, and his participation in various food service and work programs, provide jurisdictional basis for a § 2241 claim.  The language of § 2241, as well as the common-law history of the writ of habeas corpus, define the essential purpose of the writ -- to allow a person in custody to attack the legality of that custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). However, a federal prisoner may challenge the execution of his sentence in a petition pursuant to § 2241.  See Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001).

6. Conceivably, Petitioner's vocational and rehabilitative classes, and his participation in various food service and work programs, could be relevant to the issue of propriety of Petitioner's release to a half-way house, pursuant to the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.  However, prison officials typically begin evaluating inmates for Second Chance Act release not sooner than eighteen months prior to the date of projected expiration of the inmates' respective prison terms.  See, e.g., Vargo v. Grondolsky, 2009 U.S. Dist. LEXIS 87327 (D.N.J. Sept. 23, 2009).  Here, Petitioner's projected release date is April 25, 2012, see <<http://www.bop.gov/iloc2/InmateFinder

>    Servlet?Transaction=NameSearch&needingMoreList=false
>    &FirstName=edward&Middle=&LastName=watts&Race=U&Sex=
>    U&Age=&x=0&y=0>>, which indicates that Petitioner could not
>    have been evaluated for release under the Second Chance Act
>    until fall 2010 the earliest.  Since Petitioner's § 2255
>    motion was filed with the NDNY in March 2009, that is, about
>    a year and a half prior to Petitioner's earliest date of
>    evaluation for future release under the Second Chance Act,
>    it appears facially impossible for Petitioner to challenge,
>    in his § 2255 motion, any shortcomings of such – at that
>    point, still future – evaluation.  Therefore, the rationale
>    of NDNY's decision that Petitioner's challenges based on his
>    vocational and rehabilitative classes, and his participation
>    in various food service and work programs, were § 2241
>    claims is not immediately obvious to this Court.

7.  Moreover, the NDNY transferred to this District three sub-groups of Petitioner's so-qualified § 2241 challenges as a single action.  However, Habeas Rule 2(e) requires filing of a new and separate petition with regard to each separate determination being challenged.  It is self-evident that, in the event Petitioner challenged denial of jail-time credits and denial of RDAP credits, the BOP had to reach two distinct and separate determinations with regard to each of these two challenges.  Therefore, Petitioner's § 2241

      challenges to these two different denials, that is, if such denial actually took place, should not be bundled up; rather, they should be brought by means of two distinct and separate § 2241 actions.

8.   In light of the foregoing, this Court will direct the Clerk to administratively terminate the instant matter without affecting the merits of Petitioner's claims.  In order to preserve Petitioner's opportunity to challenge BOP's denial of jail-time credits and/or denial of RDAP credits, this Court will direct the Clerk to initiate two new and separate § 2241 actions, <u>Watts v. BOP</u> (addressing Petitioner's challenges as to BOP's denial of jail-time credits, if such denial was rendered), and <u>Watts v. Zickefoose</u> (addressing Petitioner's challenges as to BOP's denial of RDAP-based credits, if such denial was rendered).  Since the Court is unclear as to the basis for Petitioner's § 2241 challenges referring to his vocational and rehabilitative classes, and to his participation in various food service and work programs, the Court will *not* direct the Clerk to initiate one more, <u>i.e.</u>, third § 2241 matter for Petitioner. However, the Court's decision not to direct the Clerk to initiate such third § 2241 action for Petitioner does not bar Petitioner from initiating such action on Petitioner's own.  That being said, no statement made in this Memorandum

    Opinion and Order shall be construed as expressing the Court's position that Petitioner's § 2241 challenges based on his vocational and rehabilitative classes, and his participation in various food service and work programs, are jurisdictionally proper (or improper) and/or that such challenges are procedurally proper (or improper), and/or that such challenges are substantively meritorious (or lack merits).

9. Accordingly, the Court will allow Petitioner an opportunity to submit amended § 2241 petitions in the newly opened matters <u>Watts v. BOP</u> and <u>Watts v. Zickefoose</u>, detailing Petitioner's challenges, if any, based on denial of jail-time credits or based on denial of RDAP credits. Petitioner will be directed to submit his filing fee of $5.00 (or his <u>in forma pauperis</u> application) in each action where he elects to submit an amended petition.

10. In addition, since Petitioner is being allowed to submit amended petitions in <u>Watts v. BOP</u> and <u>Watts v. Zickefoose</u>, the Court finds it warranted to explain to Petitioner the concept of administrative exhaustion in order to ensure against the scenario where Petitioner submits a § 2241 amended petition but such petition would be subject to dismissal as unexhausted.

11. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. <u>See</u>, e.g., <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Bradshaw v. Carlson</u>, 682 F.2d 1050, 1052 (3d Cir. 1981); <u>Arias v. United States Parole Comm'n</u>, 648 F.2d 196, 199 (3d Cir. 1981); <u>Soyka v. Alldredge</u>, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals: it is "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." <u>Goldberg v. Beeler</u>, 82 F. Supp. 2d 302, 309 (D.N.J. 1999), <u>aff'd</u>, 248 F.3d 1130 (3d Cir. 2000); <u>see also</u> <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 761 (3d Cir. 1996). Although exhaustion of administrative remedies is not required where exhaustion would not promote these goals, <u>see</u>, e.g., <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may

be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 U.S. Dist. LEXIS 10288, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury"), the exhaustion requirement is not excused lightly. Indeed, it has been long established that an inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review.  The Court of Appeals addressed this issue in Moscato, 98 F. 3d 757, the case where an inmate filed a § 2241 petition after the Central Office had denied his administrative appeal as untimely.  The Court of Appeals pointed out that the inmate's failure to satisfy the time limits of the BOP's administrative remedy program resulted in a procedural default, see id. at 760, rendering judicial review of his habeas claim unwarranted, that is, unless the inmate can demonstrate cause for his failure to comply with the procedural requirement[1] and, in addition, actual

---

[1] The "cause" standard requires a showing that some external objective factor impeded the inmate's efforts to comply with the procedural bar.  See Murray v. Carrier, 477 U.S. 478, 488 (1986); United States v. Pelullo, 399 F. 3d 197, 223 (3d Cir. 2005) ("Examples of external impediments . . . include

prejudice resulting from the alleged violation. See id. at 761. Clarifying the rationale of its decision, the Moscato Court explained that application of *the cause and prejudice rule to habeas review of BOP proceedings insures that prisoners do not circumvent the agency* and needlessly swamp the courts with petitions for relief, and promotes such goals of the exhaustion requirement, such as allowing the agency to develop a factual record and apply its expertise facilitates judicial review, conserving judicial resources, and fostering administrative autonomy by providing the agency with an opportunity to correct its own errors. See id. at 761-62; see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

12. The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is

---

interference by officials") (citations and internal quotation marks omitted); Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) ("cause" typically involves a novel constitutional rule, a new factual predicate, hindrance by officials in complying with the procedural rule, or akin). In contrast, a procedural default caused by ignorance of the law or facts is binding on the habeas petitioner. See Murray, 477 U.S. at 485-87.

waived, an inmate shall submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request shall submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate shall appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for each reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

13. Therefore, Petitioner is strongly encouraged to file amended petitions in Watts v. BOP and in Watts v. Zickefoose only if his jail-time-credits and/or RDAP-based-credits challenges were duly exhausted administratively or Petitioner can make a showing as to why such exhaustion shall be excused.

IT IS, therefore, on this __31st__ day of __May__, 2011,

ORDERED that the Clerk shall administratively terminate this action for failure to comply with the requirements posed by Habeas Rule 2(e); and it is further

ORDERED that the Clerk shall make a new and separate docket entry in this matter reading "CIVIL CASE ADMINISTRATIVELY TERMINATED"; and it is further

ORDERED that the Clerk shall open two new and separate actions for Petitioner, Watts v. BOP and Watts v. Zickefoose; and it is further

ORDERED that the Clerk shall designate "Edward Watts, 13013-052, Federal Correctional Institution, Fort Dix, P.O. Box 2000, Fort Dix, NJ 08640, Pro Se" as Petitioner in each of these new actions; and it is further

ORDERED that the Clerk shall designate "Bureau of Prisons" as Respondent in Watts v. BOP, and "Warden Donna Zickefoose" as Respondent in Watts v. Zickefoose; and it is further

ORDERED that the Clerk shall designate "Nature of Suit: 530 Habeas Corpus" and "Cause: 28:2241 Petition for Writ of Habeas Corpus" in each of these two new actions; and it is further

ORDERED that the Clerk shall file this Memorandum Opinion and Order in both Watts v. BOP and Watts v. Zickefoose; and it is further

ORDERED that the Clerk shall file Petitioner's motion, docketed in this matter as Docket Entry No. 1, in both <u>Watts v. BOP</u> and <u>Watts v. Zickefoose</u>, designating such motion as "Original Petition."  The Clerk *need not* docket in <u>Watts v. BOP</u> and <u>Watts v. Zickefoose</u> the documents docketed in this action as Docket Entries Nos. 1-1, 1-2, 1-3 and 1-4, or any other documents docketed in the instant matter; and it is further

ORDERED that the Clerk shall administratively terminate both <u>Watts v. BOP</u> and <u>Watts v. Zickefoose</u> by making a new and separate docket entry in each of these two matters reading "CIVIL CASE ADMINISTRATIVELY TERMINATED."  Such administrative termination shall not be construed as withdrawal of this Court's jurisdiction over <u>Watts v. BOP</u> or <u>Watts v. Zickefoose</u>, and the Court will direct the Clerk to reopen these matters in the event Petitioner timely files his amended petition in either one of these matters; and it is further

ORDERED that, in the event Petitioner wishes to challenge BOP's denial of jail-time credits, Petitioner shall file, within 45 days from the date of entry of this Memorandum Opinion and Order, Petitioner's amended petition in <u>Watts v. BOP</u>, detailing Petitioner's challenges and administrative exhaustion of the same; and it is further

ORDERED that, in the event Petitioner wishes to challenge BOP's denial of RDAP-based credits, Petitioner shall file, within

45 days from the date of entry of this Memorandum Opinion and Order, Petitioner's amended petition in Watts v. Zickefoose, detailing Petitioner's challenges and administrative exhaustion of the same; and it is further

ORDERED that, in the event Petitioner elects to file an amended petition either in Watts v. Zickefoose or Watts v. BOP, Petitioner shall submit, together with each amended petition, either Petitioner's filing fee of $5.00 or Petitioner's application to proceed in forma pauperis; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Petitioner by regular U.S. mail, together with: (a) *two* blank § 2241 petition forms; (b) *two* application to proceed in forma pauperis for incarcerated individuals; and (c) copies of the docket sheets created in Watts v. BOP and Watts v. Zickefoose.

s/Robert B. Kugler<br>
<b>ROBERT B. KUGLER</b><br>
<b>United States District Judge</b>